UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **ElectraLED, Inc.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Chauvet & Sons, LLC,**<br><br>**Defendant.** | Case No. 2:25-cv-584<br><br>JURY TRIAL DEMANDED |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

ElectraLED, Inc. ('ElectraLED" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Chauvet & Sons, LLC ("Chauvet" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1. ElectraLED is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 10990 49th St. North, Clearwater, Florida 33762.

2. Upon information and belief, Defendant Chauvet is a Delaware Limited Liability Company with its principal place of business at 5200 NW 108th Ave., Sunrise, Florida 33351. Chauvet may be served on its registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

5. Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

6. Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the infringing methods and systems to introduce and sell millions of products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

7. Defendant maintains regular, physical, continuous, and established places of businesses, including distributors, in this District, which Defendant has established, ratified, and controlled; have employed thousands of employees to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

8. Chauvet has a regular and established place of business in this District through its territory manager who resides in this District, resides in the EDTX, rents a storage unit in the EDTX paid with Chauvet credit card, stores Chauvet inventory in the storage unit, takes that inventory to customers in the EDTX according to his duties, and accesses Chauvet portal at the customers from his work phone.

9. Defendants have authorized Dealers, Installers, and Rentals ("Chauvet Agents") that offer, sell, install and rent products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Sweet Southern Sound in Beaumont, Texas (as shown below) and Guitar Center Incorporated in Plano, Texas (as shown below).

Case 2:25-cv-00584-JRG-RSP   Document 1   Filed 05/23/25   Page 3 of 18 PageID #: 3





SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT      4

10. The Chauvet Agents have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Chauvet has contractual rights with the Chauvet Agents in the United States. As shown below, Chauvet also ratifies these facilities through its advertising of them through its website. *See* https://www.chauvetdj.com/sales-network/usa-installers/.

11. Chauvet has a defined places and sets out the physical specifications for its exclusive and separate areas within the Chauvet Agents' locations. Chauvet also explicitly retains control over the exclusiveness of the defined places and separate areas as well as their locations, resulting in physical locations for Chauvet within this District.

12. Chauvet also has regular, physical presences of Chauvet employees in this District conducting Chauvet's business. Chauvet maintains a regular and established place of business at the Chauvet defined places and separate areas at the Chauvet Agents' locations by the regular, physical presence of its employees.

13. The Chauvet Agents are Chauvet's agents for the purpose of conducting Chauvet's business in this District because Chauvet provides regular instructions directing the Chauvet Agents' performance of the repairing, refurbishing, warehousing, and packaging services that Chauvet offers to its customers.

14. Chauvet retains complete, absolute, and exclusive control over its exclusive and separate areas within the Chauvet Agents' locations.

15. Chauvet ratifies its exclusive and separate areas within the Chauvet Agents' locations because it exercises interim control over the Chauvet Agents' activities and holds out to the public that Chauvet's services are being performed at the Chauvet Agents' locations in this District. Within

      the exclusive and separate areas within the Chauvet Agents' locations, Chauvet has absolute control over their conduct. Chauvet does not merely use the exclusive and separate areas within the Chauvet Agents' locations within this District, but controls all aspects of their conduct as it pertains to Chauvet's exclusive and restrictive exclusive Chauvet areas.

16. Defendant also has a regular and established place of business in this District through the Chauvet Agents acting as agents. Defendant manifests assent to the Chauvet Agents that they shall act on Defendant's behalf and subject to its control, and the Chauvet Agents manifest assent or otherwise consent to act. Defendant maintains "interim control" over the Chauvet Agents' work, in which they rely on interactions and Defendant's instructions within the scope of their work.

17. Although referenced as "Dealers," "Installers," and "Rentals," it is evidenced below these "Dealers," "Installers," and "Rentals," are truly sales and customer service agents for the Defendant. Defendant provides instructions, marketing, brochures, training manuals, mandated policies and procedures, control agreements and contact information for sales and customer service agents, including the Chauvet Agents, by, in part, providing a "Dealer Site" for them, found at https://www.chauvetdealer.com/content/CustomPages/dealerlogin.htm and shown, in part, below.



18. Upon information and belief, to become an authorized dealer, including the Chauvet Agents, Defendant and the interested party sign agreements or agree to policies and procedure, in which the authorized dealer agrees to sell, train, oversee procedures, service, and maintain Defendant's new and existing customers' lighting fixtures, including those at issue here.

19. Defendant controls all aspects of its inventory, loaner and demonstration sets for the Chauvet Agents, as evidenced, in part, by its General Terms and Conditions for its agents (*see* Exhibit B), which references the "Dealer Agreement," and shown in a screenshot below:

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT                              7

> **CHAUVET & SONS, LLC GENERAL TERMS AND CONDITIONS OF SALE**
>
> 1. **General.** These General Terms and Conditions of Sale ("Terms") apply to all offers and sales of products ("Products") by Chauvet & Sons, LLC ("Chauvet") to customers, except for sales of Products by Chauvet to a dealer or distributor pursuant to an executed Dealer Agreement or Distributor Agreement. Chauvet reserves the right to amend these Terms at any time, upon written notice to customer, and any orders accepted by Chauvet after the effective date of such amendment will be governed by the amended Terms. By submitting an order for Products or accepting delivery of Products, in whole or in part, customer agrees to all of these Terms.
> 2. **Conflicts.** In the event of any conflict between a provision in Chauvet's written quotation, Chauvet's order confirmation or other document provided by Chauvet to customer and a provision in these Terms, the provision in the written quotation, order confirmation or other document shall govern. If any provision in Chauvet's order confirmation or other document provided to customer revises any provision of these Terms, Chauvet's quotation or customer's order, customer shall be deemed to have accepted the revised provision and such revised provision shall be binding upon customer unless customer notifies Chauvet, in writing, within five (5) business days after customer's receipt of such order confirmation or other document or at least one (1) business day prior to delivery, whichever occurs earlier.
> 3. **Product Sale Terms.** The Products, prices, delivery and payment terms applicable to customer's Product orders shall be set forth in one or more written quotations provided by Chauvet to customer. Quotations issued by Chauvet to customer are subject to cancellation or change by Chauvet, without notice, until a written purchase order is received and accepted by Chauvet. Unless otherwise stated in Chauvet's written quotation, all prices exclude any and all sales, use, excise, value added or other taxes or duties imposed by any governmental authority and any freight charges, all of which are the sole responsibility of customer.
> 4. **Product Orders.** All orders for Products by customer are subject to acceptance by Chauvet. Upon Chauvet's acceptance, all Product orders are binding contracts on customer to purchase the Products specified therein pursuant to these Terms. Any provision contained in customer's purchase order or any other customer document which conflict with or are not expressly set forth in these Terms, Chauvet's limited warranty or any other Chauvet document applicable to the Products shall have no force or effect and customer waives any right which it might have to rely on such provision, unless expressly agreed upon in a writing signed by an executive officer of Chauvet.

20.  Highlighted from the above, Chauvet Agents must abide by strict procedures, such as:

- Conflicts;
- Product Sale Terms; and
- Product Orders.

21.  In its Motion to Dismiss (Dkt. No. 11) ("Motion to Dismiss"), Defendant admitted in its supporting Declaration of Grant Goodson (Dkt. No. 11-1) ("Goodson Decl."), Defendant has Chauvet Agents in the Eastern District of Texas. Goodson Decl. at 7-13.

22.  In support of its Motion to Dismiss, Defendant attaches its Dealer Agreement with Sweet Southern Sound ("Sweet Southern Agreement"), located in the Eastern District of Texas in Beaumont, Texas. *See* Motion to Dismiss, 11-3, Ex. 1. The Sweet Southern Agreement makes clear Sweet Southern Sound and other Chauvet Agents must abide by strict procedures, all of which are in the control of Chauvet, such as:

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                    8

- Distribution Rights that strictly control who the Chauvet Agents can sell to;

- a MAP Policy that sets and controls minimum pricing for Chauvet products;

- trademark requirements in which Chauvet Agents covenant to submit for approval all advertising and promotional material;

- purchase orders by a Chauvet Agent must be approved first by Chauvet, thereby making them the direct agent of Chauvet for any purchases for of end users;

- how payments shall be made, and penalties be enforced;

- a termination provision that dictates termination in Chauvet's favor;

- an indemnification provision for the Chauvet Dealers to indemnify Chauvet for various liabilities; and

- a confidentiality provision that evidences the fact this is an agent relationship in which the Chauvet Agents receive Chauvet's confidential and competitive business information.

23. The Sweet Southern Agreement further evidences Chauvet manifested consent that Sweet Southern Sound act on its behalf on marketing and selling Chauvet products, and that Sweet Southern Sound consented to do so.

24. Therefore, the contracts between Defendant and the Chauvet Agents, and its Dealer Site, establish (1) Defendant has the right to direct and control the Chauvet Agents, (2) Defendant has manifested consent that the Chauvet Agents act on its behalf, and (3) the Chauvet Agents have consented to act on behalf of Defendant.

25. The Chauvet Agents sell, monitor, train, oversee use, and handle complaints and returns, as evidenced in Ex. B, lighting fixtures obtained from and on behalf of Defendant for customers in this District. Those activities involve storage, transport, training, monitor and exchange of goods and services and are part of Defendant's business.

26. Defendant has established and ratified the Chauvet Agents' places of business because the contracts affect how they perform sales, installations and rentals with Defendant products. *See* Ex. B. Defendant also "Product Sale Terms." *Id*. Defendant also controls the Chauvet Agents with respect to "Product Orders." *Id*.

27. As shown above, the Chauvet Agents in this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them—authorized dealers, installers and rentals in this District.

28. Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Chauvet Agents' locations by the regular, physical presence of its employees.

29. Defendant ratifies the Chauvet Agents' locations because it exercises interim control over the Chauvet Agents' activities and holds out to the public that Defendant's distribution, warehousing, marketing, installing, renting and sales of the products are being performed at and by Chauvet Agents' locations in this District.

30. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022) and *IOT INNOVATIONS LLC, Plaintiff, v. MONITRONICS INTERNATIONAL, INC., d/b/a BRINKS HOME*, Defendant., No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5

(E.D. Tex. Sept. 11, 2023), *report and recommendation adopted sub nom. Iot Innovations LLC v. Monitronics Int'l, Inc.*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

## **BACKGROUND AND PATENTS-IN-SUIT**

31. ElectraLED produces high-quality, energy-efficient, commercial LED lighting products. With a broad and continually developing product offering, ElectraLED provides an array of solutions focused on commercial LED lighting needs. ElectraLED is proud to be made in the U.S.A., and ElectraLED's mission is to provide the most economical, expertly engineered and rigorously tested LED illumination products with unparalleled service and support to customers worldwide.

32. ElectraLED takes pride in the continuous development of new and innovative products to meet the efficiency demands of the future. All ElectraLED lighting systems are designed in-house and every product is subjected to third party certification testing for safety, longevity and performance.

33. In developing one of those new and innovative products, ElectraLED's engineers conceived U.S. Patent No. 9,618,187 ("the '187 Patent or the "Patents-in-Suit"), relating to durable light fixtures with improved thermal management properties to ensure reliable operation.

34. ElectraLED is the sole and exclusive owner, by assignment, of the Patents-in-Suit. Thus, ElectraLED has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

35. The Patents-in-Suit are valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

36. The Patents-in-Suit includes numerous claims defining distinct inventions. As discussed below, the inventions generally relate to durable light fixtures with improved thermal management properties to ensure reliable operation. More specifically, by way of example, the '187 Patent contemplates a light engine featuring an arrangement of light emitting diodes (LEDs), a rugged

        high thermal performance housing featuring improved thermal performance through the use of an air flow passageway, and an external power supply removably embedded within an optional external enclosure.

37. The priority date of each of the '187 Patent is at least as early as June 13, 2007. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

38. By way of example, before the inventions of the '187 Patent, light fixtures suitable for commercial use, such as in or around building and commercial facilities, were typically designed to be durable since they can be struck or damaged during business operations. To provide this durability, prior art light fixtures typically had substantial housings that protected the light source. Most prior art commercial light fixtures utilized fluorescent bulbs, halogen bulbs, mercury vapor lamps, or metal halide lamps as the light source. However, prior art commercial fixtures suffered from a variety of limitations, including but not limited to, high cost, low efficiency, high power consumption and/or poor light output quality. Thus, the overall appeal of prior art commercial fixtures was limited, and will further erode as energy costs (and the related operating costs) continue to increase. *See* '187 Patent, Col. 1, ll. 39-55.

39. The inventors of the '187 Patent conceived new light fixtures to solve these limitations and to provide advantages and aspects not provided by conventional light fixtures. This is achieved by having a light fixture that includes an LED light engine, which by design, is energy efficient and provides high quality light output. The inventive light fixture includes a rugged housing and an internal power supply that is thermally isolated while residing within the housing. Positioning the power supply within the housing minimizes the opportunity for incurring damage to the power supply. This is of particular importance when the light fixture is configured for use in high-traffic commercial or industrial applications, such as warehouses, loading docks or shipping/receiving

areas, where the light fixture is prone to be stricken by forklifts and other large objects. While an internal power supply enjoys a reduced chance of being damaged, the power supply is susceptible to failure from heat generated by the light engine. The light fixture includes several novel heat management features designed to thermally isolate the power supply in order to reduce the risk of failure and thereby increase the reliability of the light fixture. *See* '187 Patent, Col. 1, ll. 66-67 and Col. 2, ll 1-15.

40. Another important aspect of the invention, to increase its performance and durability, and minimize issues arising from heat generated by a light engine, '187 Patent discloses a light fixture which includes a lens cover, as part of the heat management components of the housing, used to cover and protect the LEDs and the light engine. In different embodiments, the lens cover can be made of polycarbonate, acrylic or other suitable transparent or translucent material which is cut from flat extruded sheet stock or be injection molded. The lens cover can be water clear or diffused to help reduce glare. It may also act as both an optical lens and a protective cover functioning as a light pipe to collimate the light at a desired point. *See* '187 Patent, Col. 5, ll. 26-29 and, Col. 7, ll. 7-16.

41. The '187 Patent is a pioneering patent, and has been cited as relevant prior art in 203 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Toshiba Lighting, Cooper Technologies, Ingersoll-Rand, LG, Eaton Intelligent Power, LG, and Cree, Inc.

42. The claims of the Patents-in-Suit were all properly issued, and are valid and enforceable.

43. The expiration date of the '187 Patent is no earlier than June 13, 2027.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                    13

## CHAUVET'S INFRINGING PRODUCTS

44. Upon information and belief, Chauvet makes, sells, advertises, offers for sale, uses, or otherwise provides light fixtures that utilize the Patents-in-Suit's patented durable light fixture with improved thermal management properties to ensure reliable operation. Chauvet has manufactured and sold products that infringe the Patents-in-Suit, and which include at least, but not limited to, the following:

- SlimPAR Pro H USB
- SlimPar Pro Pix
- SlimPAR Pro Q IP
- SlimPAR Pro Q USB
- SlimPAR Pro QZ12 USB
- SlimPAR Pro W USB
- SlimPAR 56 ILS
- SlimBANK H18 ILS
- SlimPAR Pro W USB
- SlimBANK H18 ILS
- SlimPANEL Tri 24 IP
- COLORdash Accent 3
- COLORdash Par-Quad 18
- COLORdash Par-Quad 7
- COLORdash PAR H18X
- COLORdash Par H7X IP
- COLORdash PAR H7X
- COLORdash PAR H12X IP
- COLORado 2 Solo VW
- COLORado 3 Solo
- COLORado 1QS
- COLORado 2-Quad Zoom
- COLORado 1-Quad Zoom
- STRIKE P38
- COLORdash PAR H12IP
- COLORdash PAR H7IP
- Ilumipanel MLS
- ILUMIPOD SL
- ILUMIPOD ML
- ILUMIPOD LL
- LED Shadow 2 ILS

45. Collectively, the above listed products, among other light fixtures, including all augmentations to these fixtures, all the foregoing is referred to herein as the "Accused Instrumentalities."

46. Additionally, as shown below, and with more detail in Exhibit A attached hereto, the Accused Instrumentalities include each and every limitation of at least, but not limited to, claim 1 of the '187 Patent, and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.



**COUNT I**
**Infringement of U.S. Patent No. 9,618,187**

47. Plaintiff incorporates the above paragraphs by reference.

48. Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                              15

49. Defendant thus has infringed and continues to infringe at least claim 1 of the '187 Patent literally and/or under the doctrine of equivalents.

50. Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via resellers, distributors and its Internet domain web pages. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

51. Defendant has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '187 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing tutorials, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '187 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '187 Patent.

52. Defendant individually, collectively, or through others or intermediaries, have contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '187 Patent by making, using, offering for sale, selling, and/or importing, material parts of

the inventions claimed in the '187 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '187 claims.

53. Defendant has been on actual notice of the '187 Patent at least as early as the date of the Original Complaint. Defendant's direct and indirect infringement of the '187 Patent have thus been committed with knowledge of the '187 Patent, making Plaintiff liable for direct, indirect, and willful infringement.

54. Defendant's infringement of the '187 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

55. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the Patents-in-Suit;

2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the Patents-in-Suit;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant from further acts of infringement with respect to the Patents-in-Suit;

6. Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired Patents-in-Suit; and

7. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Dated: May 23, 2025                                   Respectfully Submitted

/s/ Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF
ELECTRALED, INC.**